**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 07-10101 (BLS) |
| | ) | |
| JAMES E. MURRAY, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | **Related to Docket No. 25** |
| | ) | |

## OPINION[1]

This is a case about a $200,000 license plate. The Debtor filed a petition under Chapter 7 of the Bankruptcy Code (the "Code") and failed to schedule his ownership of Delaware motor vehicle license plate number sixty-seven (the "License Plate"). The Debtor voluntarily converted his case to a case under Chapter 13 of the Code and the Chapter 7 trustee, Alfred Thomas Giuliano (the "Movant"), subsequently learned of the valuable License Plate. The Movant now asks this Court to undo the conversion and to return this case to Chapter 7. For the reasons set forth below, the Movant's motion to reconsider the conversion order (the "Motion") is denied.

### BACKGROUND

A.  Factual Background

The Debtor is an eighty-six-year-old man and has lived in Delaware his entire life. Approximately forty-five years ago,

---

[1] This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

1

the Debtor asked his friend, George Collins, Jr. ("Junior"), if he could have one of two low-digit license plates issued by the Delaware Department of Motor Vehicles that Junior possessed. The license plates bore the numbers sixty-seven and eighty-five. Junior responded by telling the Debtor that he could have both at no cost.[2] The Debtor, owning only one car, did not think he needed two license plates and took only the plate numbered sixty-seven. The License Plate is now affixed to a 2000 Lincoln Continental with 160,000 miles worth approximately $4,800, which the Debtor owns jointly with his son. (Murray Dep. 12:6.) The Debtor uses this vehicle on a daily basis.

On January 1, 2007, the Debtor voluntarily filed a bankruptcy petition under Chapter 7 of the Code. The Movant was appointed as the Chapter 7 trustee to administer the bankruptcy case. On March 26, 2007, the United States Trustee moved to dismiss the Debtor's case pursuant to Code section 707(b)(3) on the ground that the Debtor has sufficient income to pay all or a portion of his creditors. To resolve the United States Trustee's motion, the Debtor agreed to convert his case from Chapter 7 to Chapter 13 under section 706(a) of the Code and on June 6, 2007, the Court granted the Debtor's motion to convert. The Chapter 13

---

[2] "I said, Junior, I would like to have one of them tags. He said, all right. I said, how much would it cost me? He said I'll give it to you. Forty-five years ago things was a lot different." (Murray Dep. 24:18-21.)

plan originally proposed by the Debtor required him to pay $535 per month for thirty-six months.  This plan would have resulted in the Debtor's unsecured creditors being paid $17,334 (approximately thirty-three percent) of the $52,661.10 the Debtor owes.

Shortly after the conversion of the Debtor's case, the Movant received an anonymous letter advising him that the Debtor owned the License Plate.  Movant alleges, and the Debtor does not dispute, that the License Plate has an estimated value between $200,000 and $250,000.  (Hr'g Tr. 10:16-18, Sept. 26, 2007.)  In light of these developments, the Debtor amended his Chapter 13 plan on July 16, 2007.  Under the amended Chapter 13 plan (the "Amended Plan"), the Debtor will sell the Lincoln with the License Plate attached within six months of the Amended Plan's confirmation and use the proceeds of the sale to pay his unsecured creditors in full.  Until the Lincoln is sold, the Debtor will pay $535 per month under the Amended Plan.  The Amended Plan awaits confirmation pending the resolution of the Motion.

The Movant filed the Motion on June 12, 2007, seeking reconsideration of the Court's Order converting the Debtor's case from Chapter 7 to Chapter 13.  The Movant argues that the Debtor's failure to disclose his ownership of the License Plate constitutes new evidence indicating bad faith conduct by the

Debtor sufficient to forfeit his right to convert under section 706(a). The Debtor responds that his failure to schedule his interest in the License Plate does not constitute bad faith because he did not know that the License Plate possessed any significant monetary value. The question before the Court is whether the Debtor moved to convert his bankruptcy case in bad faith, such that the Court should reconvert the case back to Chapter 7.

B.   Procedural Background

On June 12, 2007, the Movant filed the Motion seeking reconsideration of the Court's Order converting the Debtor's case. The Debtor opposes the Motion but did not file a formal opposition. The Chapter 13 trustee takes no position on the issue. The parties agreed to proceed with oral argument on September 26, 2007, and stipulated to the admission of the trial deposition of the Debtor in lieu of live testimony at the hearing.

This matter has been fully briefed and argued. It is ripe for decision.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O).

**DISCUSSION**

The Movant asks the Court to reconsider the Order converting the Debtor's case. A court should grant a motion to reconsider only where: (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there exists a need to prevent manifest injustice or correct a clear error of law. North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995). In this case, the Movant has presented new evidence derived via an anonymous letter: the Debtor owns and did not schedule a valuable asset, the License Plate. The Debtor does not dispute this. Accordingly, the Court will now reconsider the Order to convert the Debtor's case, taking into account the new evidence and the arguments made by both parties.

The Debtor converted his Chapter 7 case to Chapter 13 under section 706(a) of the Code. The Movant argues that a debtor's right to convert a case pursuant to section 706(a) is not absolute and that this Debtor forfeited his right by seeking to convert in bad faith. The Court begins its discussion with a review of section 706(a).

Section 706(a) of the Code allows a debtor to "convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of [the Code] at any time, if the case has not been converted under section 1112, 1208, or 1307 of [the Code]." 11 U.S.C. § 706(a).

Read on its own, this section would appear give the Debtor an absolute right to convert his or her Chapter 7 case to one under Chapter 13. Recent controlling case law instructs, however, that section 706(a) cannot be read in isolation and must instead be read in conjunction with section 706(d). <u>Marrama v. Citizens Bank of Massachusetts</u>, 127 S. Ct. 1105, 1110 (2007). Reading sections 706(a) and 706(d) together operates to condition a debtor's right to convert under certain circumstances.

Section 706(d) provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). These words expressly condition a debtor's right to convert a case to one under Chapter 13 on his or her eligibility to be a "debtor" under Chapter 13. <u>Marrama</u>, 127 S. Ct. at 1110.

A debtor may not qualify as a "debtor" under Chapter 13 if, pursuant to section 1307(c) of the Code, sufficient cause exists for a court to convert a debtor's Chapter 13 case to Chapter 7 or dismiss it. <u>Id.</u> Section 1307(c) does not list bad faith conduct by a debtor as a fact that would constitute sufficient cause for a court to dismiss a debtor's Chapter 7 case or convert it to Chapter 13. 11 U.S.C. § 1307(c). The Supreme Court, however, recently held in <u>Marrama</u> that dismissing or converting a Chapter 13 case for bad faith conduct is implicitly authorized by the

words "for cause" in section 1307(c).  <u>Marrama</u>, 127 S. Ct. at 1111.

In <u>Marrama</u>, the debtor filed a Chapter 7 bankruptcy case and made a number of deliberately misleading and inaccurate statements about his principal asset, a house in Maine, in the schedules attached to his petition.  <u>Id.</u> at 1108.  Specifically, the debtor listed the house's value as zero and denied transferring any property during the year preceding the filing of his petition other than in the ordinary course of business.  <u>Id.</u>  These statements proved false.  "[T]he Maine property had substantial value, and [the debtor] had transferred it into [a] newly created trust for no consideration seven months prior to the filing of his Chapter 13 petition."  <u>Id.</u>  The debtor ultimately admitted that he had transferred the house to protect it from his creditors.  <u>Id.</u>

When the Chapter 7 trustee in <u>Marrama</u> advised the debtor that he intended to recover the house for the bankruptcy estate, the debtor filed a motion to convert his case to Chapter 13 in a transparent effort to rid himself from the trustee's control and interference.  <u>Id.</u>  The trustee opposed the motion to convert, arguing that the debtor made his request in bad faith and that conversion would constitute an abuse of the bankruptcy process.  <u>Id.</u>  The lower courts agreed and the Supreme Court affirmed, ultimately holding that a debtor who seeks to convert his or her

bankruptcy case in bad faith forfeits the right provided by section 706(a) to convert because such a party is not eligible to be a "debtor" under Chapter 13 pursuant to section 1307(c). Id. at 1108-12.

In reaching its decision, the Court in Marrama declined to articulate exactly "what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or deny conversion from Chapter 7," only stating that behavior rising to the level of bad faith must be "extraordinary" and "atypical." Id. at 1112 n.11. Prior to the Marrama decision, however, a number of courts had already recognized bad faith conduct as one factor constituting sufficient cause under section 1307(c) to dismiss or convert a debtor's Chapter 13 case. See, e.g, In re Lilley, Jr., 91 F.3d 491, 496 (3d Cir. 1996); In re Pakuris, 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2001); In re Tardiff, 145 B.R. 357, 360 (Bankr. D. Me. 1992). These courts have also identified a number of other factors, including but not limited to bad faith, to review when considering a motion to convert in the context of sections 706 and 1307(c). Pakuris, 262 B.R. at 335-36; Tardiff, 145 B.R. at 360. The factors discussed in these cases remain relevant and helpful to the Court following the decision in Marrama.

In deciding a contested motion to convert under section 706(a), with sections 706(d) and 1307(c) in mind, courts consider

the "totality of the circumstances," including the following factors:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith . . . ; (ii) whether the debtor can propose a confirmable plan; (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditor caused by allowing conversion; (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and (v) whether conversion would further an abuse of the bankruptcy process.

Pakuris, 262 B.R. at 335-36. The Court will therefore analyze the facts of this case in light of the above factors.

A.   Good Faith

In Pakuris, the debtor failed to disclose an interest in an equitable property distribution arising from a divorce proceeding conducted contemporaneously with her bankruptcy case. Pakuris, 262 B.R. at 332. When the Chapter 7 trustee pursued the property distribution claim, the debtor filed a motion to convert her case to Chapter 13. Id. at 333. The court found that the debtor sought this conversion in bad faith. Id. at 336. The learned judge in Pakuris observed that, when conducting a good faith analysis involving a motion to convert, a court should consider the totality of the circumstances "including a review of facts such as [(1)] the timing of the motion; [(2)] the debtor's motive in filing the motion; and [(3)] whether the debtor has been forthcoming with the bankruptcy court and creditors." Id. at

9

335-36.  These factors have been applied by courts after <u>Marrama</u>. <u>In re Piccoli</u>, 2007 WL 2822001, 6-7 (E.D. Pa. 2007).

Applying the factors from <u>Pakuris</u>, the Court must consider whether the Debtor has been forthcoming with the Court and his creditors regarding his lack of knowledge of the License Plate's value.  The Court believes that he has been forthcoming for several reasons.

First, the value of the License Plate is, unlike the house in <u>Marrama</u>, not obvious.  It is frankly astonishing to the Court that a person would pay over $200,000 for the privilege of having only two digits on their license plate instead of the more typical five or six.  The Court does not therefore automatically assume that the Debtor knew the License Plate had significant value.

Second, the facts reflect that the Debtor assigned only personal or sentimental value to the License Plate.  The Debtor stated in his deposition, "I like [the License Plate].  I like two numbers and I just like it.  I feel good riding around with it . . . ."  (Murray Dep. 20:11-12.)  In addition, he has received compliments on the License Plate.  (Murray Dep. 9:5-7.)  Despite this, the Debtor has "never been offered" any money for the License plate.  (Murray Dep. 8:8-10.)  The Debtor has also never sought an offer.  (Murray Dep. 10:16-19.)

Third, the Debtor has never treated the License Plate as having significant value. The Debtor obtained the License Plate at no cost and actually turned down an offer for a free, second, similar license plate (a decision he presumably regrets). (Murray Dep. 24:18-21.) The License Plate also was not separately administered in a property settlement in the Debtor's divorce prior to the bankruptcy. (Murray Dep. 15:22-16:6.)

Fourth and finally, it is not immediately apparent to the Court that the Debtor intended to mislead any interested party. The schedules contain no separate line for "license plate," and no evidence suggests that any interested party asked the Debtor about it. The record does not support an inference that the Debtor deliberately concealed the existence, and his ownership, of the License Plate.

Next, the Court must consider the timing of and motive for the Debtor's motion to convert. On March 26, 2007, the United States Trustee moved to dismiss the Debtor's case on the ground that the Debtor had sufficient income to pay all or a portion of his creditors. In response to this motion and after some negotiation (Hr'g Tr. 37:4-14, September 26, 2007), the Debtor moved to convert his case from Chapter 7 to Chapter 13 and the Court promptly granted the Debtor's motion to convert. These facts do not indicate that the Debtor acted in bad faith or with fraudulent intent. The Debtor did not seek to convert his case

to escape the control of the Chapter 7 trustee, as the debtor did in Marrama. To the contrary, the Debtor moved to convert his case because the United States Trustee forced him to do it.  (Hr'g Tr. 37:11-14.)

The policy behind section 706(a) is that "the debtor should always be given the opportunity to repay his debts . . . ." Marrama, 127 S. Ct. at 1110.  In Marrama, the debtor did not seek conversion to repay his creditors, but rather to hide a substantial asset.  The present case differs.  This Debtor will repay his creditors in full in accordance with a plan providing for the sale of the asset the Movant accuses him of hiding.  This makes the Debtor immediately distinguishable from the debtor in Marrama. The Debtor's actions in this case therefore are not the extraordinary and atypical sort the Supreme Court sought to prevent through its decision in Marrama.

B.  Other Factors

The Court must consider the Debtor's ability to propose a confirmable Chapter 13 plan.  "[C]onversion should not be permitted when it would serve no point, for example, in matters when the debtor is demonstrably incapable of proposing a feasible plan." Pakuris, 262 B.R. at 337.  In this case, the Debtor's Amended Plan awaits confirmation pending the resolution of this Motion.  The Movant has pointed to no reason why the Court could not confirm the Amended Plan and, given that the Amended Plan

12

appears feasible, the Court will likely approve it. Accordingly, the Debtor has provided sufficient evidence of his ability to propose a confirmable plan.

The Court must also "weigh the impact to the debtor of denying conversion against the prejudice to creditors of allowing conversion." Pakuris, 262 B.R. at 337. The Movant contends that allowing conversion in this case would cause prejudice to the Debtor's unsecured creditors. In particular, the Movant argues that creditors will receive greater repayment through a Chapter 7 liquidation than through the Debtor's Amended Plan because only a small fraction of unsecured creditors in typical Chapter 7 and Chapter 13 cases will file claims. (Hr'g Tr. 10:3-9, Sept. 26, 2007.) Upon conversion back to a Chapter 7 case, however, the Movant has offered to file claims on behalf of creditors who do not timely file the claims themselves. See generally FED. R. BANKR. P. 3004 (providing that "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims . . . "). At bottom, the Movant wants this Court to ensure and provide for the distribution of estate property to creditors who will not bother to file a claim for themselves. The Court finds this request unavailing. The Debtor's conversion will not alter the

creditors' rights to payment in full of their claims upon the filing of an allowed claim.

The Court also takes into account "the effect of conversion on the efficient administration of the bankruptcy estate." Pakuris, 262 B.R. at 338. The Debtor's Amended Plan is set for prompt confirmation and contemplates full consummation within six months of confirmation. Allowing the conversion to stand does not therefore interfere with the prompt administration of the Debtor's bankruptcy estate.

Finally, "a court may also consider whether the conversion would further an abuse of the bankruptcy process." Pakuris, 262 B.R. at 338. "[A] motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors." Id.; see also Marrama, 127 S. Ct. at 1111-12. In this case, the Movant has presented the Debtor's failure to schedule the License Plate as the sole evidence that the Debtor seeks to abuse the bankruptcy process. The Court has found that this failure to schedule the License Plate did not occur as a result of bad faith or deliberate misconduct. In addition, the Debtor has filed a repayment plan that, if confirmed and consummated, will result in the prompt and full repayment of his creditors.

**CONCLUSION**

For the foregoing reasons, the Court concludes that the Debtor's failure to schedule his valuable, low-digit License Plate does not constitute bad faith conduct and does not impair the Debtor's ability to convert his Chapter 7 case to Chapter 13 under section 706(a). Accordingly, the Court will deny the Movant's Motion.

An appropriate order follows.

By the Court,

_____
Dated: October 24, 2007          Brendan Linehan Shannon
                                 United States Bankruptcy Judge